MICKLE, Judge.
This is an appeal and cross-appeal from a final judgment entered following a jury trial in an action arising from monies invested in a business venture. We affirm in part, reverse in part, and remand.
The relevant facts reflect that in 1987, Jerry Fletcher (Fletcher), Donald Tucker (Tucker) and Ward Rodgers (Rodgers) formed Bayland Fisheries Corporation (Bay-land Fisheries) for the purpose of raising and harvesting fish. In 1988, George Mariani (Mariam) was solicited by Rodgers to invest $100,000 in Bayland Fisheries. After touring the fish hatchery facility, and following several discussions with Fletcher, Tucker and Rodgers, Mariani asked his son, an attorney, to notify Rodgers that he did not wish to invest unless he was guaranteed the return of his money if, after reviewing the business’ prospectus, he decided against investing. Rodgers was so notified. Thereafter, on January 4, 1989, a letter signed by Fletcher, who is president of Bayland Fisheries, and “okayed” by Tucker, who is an attorney and the chairman of the board of Bayland Fisheries, was sent by facsimile to Mariam. The letter provided in pertinent part:
... the Company will provide each present shareholder with a copy of the offering memorandum, accompanied by an offer to rescind the earlier stock purchase. This rescission offer will remain open for thirty days from receipt. During this thirty day period, a rescission offeree may return his shares of stock to the Company in exchange for payment by the Company of the purchase price, plus interest since the time of purchase.
We are sending today by overnight mail a draft of the Company’s private placement memorandum. This draft is incomplete. When the private offering of stock commences, you will be sent a final draft of this private placement memorandum. Being a Company shareholder at that time, you will also receive a rescission offer which will remain open for thirty days.
Upon receipt of this letter, Mariani made a decision to invest, pending receipt and review of the private placement memorandum. Rodgers suggested to Mariani that he send the $100,000 by wire to an escrow account controlled by Tucker. Rodgers and Fletcher had previously discussed this procedure, which had been utilized before with various investors. It was Rodgers’ understanding that the funds were not to be released immediately to Bayland Fisheries upon arriving in Tucker’s account, but rather were to stay in escrow during the rescission period. Rodgers testified he assumed that Tucker would handle the money correctly because Tucker knew of the rescission agreement. Mariam’s son obtained wiring instructions from Tucker’s secretary, and, on January 5, the funds were wired into Tucker’s trust account. On the following day, Tucker wrote out a check in the amount of $100,000 to the order of Bayland Fisheries and forwarded the check to Fletcher. On January 25, after receiving the private placement memorandum, Mariani elected not to invest and sent to Bayland Fisheries a rescission letter, requesting the return of his money. Mariani was informed that the monies had already been disbursed and spent. To this date, the $100,000 has not been refunded to Mariani.
Mariani subsequently sued Bayland Fisheries, Tucker, Rodgers and Fletcher alleging civil theft, sale of unregistered securities, securities fraud, common law fraud, and breach of fiduciary duty. In addition, Maria-ni requested an award of punitive damages in connection with the claims for common law fraud and breach of fiduciary duty. The claims proceeded to jury trial against Tucker and Fletcher.[1] After Mariani presented his case-in-chief, Tucker and Fletcher moved for a directed verdict on all counts except the breach of contract claim. Directed verdicts were granted on the claims for civil theft, securities fraud, and common law fraud. In addition, the judge removed from the jury’s consideration the claim for punitive damages. The jury returned a verdict in favor of Mar-iani on the remaining two counts of sale of *224 unregistered securities and breach of fiduciary duty.
As the sole claim of error in the main appeal, Tucker and Fletcher[2] contend that the trial court erred in denying a motion for mistrial based on the use of an impermissible “Golden Rule” argument by Mariani’s trial counsel during closing statements. We find no abuse of discretion in the denial of the motion for mistrial. First, no objection was posed by defense counsel at the time of the comment, therefore precluding review on appeal absent irreparable and fundamental error. Budget Rent A Car Systems, Inc. v. Jana, 600 So.2d 466 (Fla. 4th DCA 1992); LeRetilley v. Harris, 354 So.2d 1213 (Fla. 4th DCA 1978). Second, the remarks made by counsel during closing argument were not of such a sinister influence as to constitute fundamental error. See Baggett v. Davis, 124 Fla. 701, 169 So. 372 (1936).
We turn now to the more troublesome issues raised on cross-appeal. Mariani challenges the entry of directed verdicts against him on the claims for civil theft, securities fraud, common law fraud, breach of fiduciary duty, as well as the claim for punitive damages. For the reasons set forth below, we agree with Mariani that the claims for securities fraud, common law fraud and punitive damages should have been submitted to the jury.
A directed verdict should be affirmed only if, in viewing the evidence in the light most favorable to the nonmoving party, it appears that the trier of fact could not have reasonably differed as to the establishment of material facts. Kirby v. OMI Corp., 561 So.2d 666 (Fla. 1st DCA 1990); Gant v. Lucy Ho’s Bamboo Garden, Inc., 460 So.2d 499 (Fla. 1st DCA 1984). If there is some evidence to support the position of the party against whom a directed verdict has been granted, the appellate court must reverse. Jones v. Heil Co., 566 So.2d 565 (Fla. 1st DCA 1990).
We address first the claim for securities fraud. Section 517.301, Florida Statutes (1987), provides:
(1) It is unlawful and a violation of the provisions of this chapter for a person:
(a) In connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly:
1. To employ any device, scheme, or artifice to defraud;
2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.
Mariani placed $100,000 in the escrow account of Tucker after receiving a representation that the funds would be returned if, within 30 days after receipt of the private placement memorandum, he elected not to invest. The evidence established that a material misrepresentation of fact occurred upon which Mariani relied, and that Tucker and Fletcher, as officers of the corporation, personally participated in that misrepresentation. The letter of January 4 was signed by Fletcher and “okayed” by Tucker. Although Fletcher testified he did not remember the specific contents of the letter, he did not dispute that Mariani was informed he would receive his money back within 30 days and that the refund would be immediate. Fletcher testified he never dreamed Mariam would ask for the return of his money. Although Tucker claimed no knowledge of the 30-day rescission offer or of any agreement to keep the monies in escrow, Rodgers testified that Tucker and Fletcher were in fact aware of the rescission agreement. The evidence was sufficient to allow the claim of securities fraud to go to the jury as to both Tucker and Fletcher.
*225 A similar analysis may be applied to the claim of common law fraud. The elements of common law fraud are:
(1) A false statement concerning a material fact.
(2) Knowledge by the person making the statement that the representation is false.
(3) The intent by the person making the statement that the representation will induce another to act on it.
(4) Reliance on the representation to the injury of the other party.
See Lance v. Wade, 457 So.2d 1008, 1011 (Fla.1984). As with the claim of securities fraud, the determinant issues are whether Tucker and Fletcher had knowledge that the monies sent by Mariani were to be held in escrow for a 30-day period and whether Tucker and Fletcher intentionally conveyed this misrepresentation to Mariani. Applying the aforementioned evidence to this claim, we reach the same conclusion. The decision to direct a verdict can be affirmed only if there is no evidence in the record that could support the position of the party against whom the motion has been granted. Herein, since there was some evidence that Tucker and Fletcher engaged in actionable fraud, it was error to remove this claim from the jury’s consideration.
We affirm, however, the entry of a directed verdict on the claim for civil theft. Section 812.014(l)(a), (b), Fla.Stat., defines civil theft as:
1. Knowingly obtaining or using the property of another with the intent to:
a. Deprive the person of the property.
b. Appropriate the property to his own use or to the use of any person not entitled thereto.
We agree with Fletcher and Tucker that there was insufficient clear and convincing evidence to prove the felonious intent necessary to withstand entry of a directed verdict on this claim. See § 772.11, Fla.Stat.; Westinghouse Elec. Corp., Inc. v. Shuler Bros., Inc., 590 So.2d 986 (Fla. 1st DCA 1991); Aspen Investments Corp. v. Holzworth, 587 So.2d 1374 (Fla. 4th DCA 1991).
Finally, we reverse the entry of a directed verdict in favor of Tucker and Fletcher on Mariani’s punitive damages claim. The record contains sufficient evidence of conduct on the part of Tucker and Fletcher so willful and wanton in nature as to constitute a jury question on the issue of punitive damages.
In summary, we reverse and remand for trial Mariani’s claims for securities fraud, common law fraud, and punitive damages. We affirm in all other respects.
WEBSTER, J., concurs in result.
BENTON, J., concurs and dissents with opinion.

. Prior to trial, a final judgment on the pleadings was entered against Rodgers and Bayland Fisheries.

. Fletcher filed with this court a notice of adoption of the arguments contained in Tucker's ap-peltate brief. No separate brief was filed by Fletcher.