ON MOTION FOR REHEARING EN BANC

GRIFFIN, J.
The court has elected to consider this case en banc. We withdraw the prior panel opinion and substitute the following opinion.
State Farm Fire and Casualty Company [“State Farm”] issued an automobile insurance policy containing an examination under oath [“EUO”] provision to its insured, Renard St. Louis [“St. Louis”]. The policy contains a clause providing that “any person or organization making claim or seeking payment ... must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require.” After St. *331 Louis was involved in a motor vehicle accident, he received medical care from Appellants, David Shaw, David G. Shaw, D.C., P.A., d/b/a Central Florida Chiropractic Center, DC Services, LLC, DC Supply, LLC, and Charles Machler [collectively, “Shaw”]. At the time of treatment, St: Louis assigned his no-fault benefits under the State Farm policy, to the extent of the services provided, to Shaw.[1] When Shaw sought payment from State Farm under the assignments for the services rendered to St. Louis, State Farm demanded that Shaw appear for an EUO. Shaw refused to submit to the EUO and State Farm refused payment. Shaw subsequently filed suit seeking a declaratory judgment that, as assignees of the right to payment, they are not required to attend an EUO. The trial court entered judgment in favor of State Farm. We reverse.
The issue before the court is whether an EUO clause in an automobile insurance policy is binding on an assignee of the right to payment of no-fault benefits. It is undisputed that a provision in an insurance policy that requires the insured to submit to an EUO qualifies as a condition precedent to recovery of policy benefits. See Goldman v. State Farm Fire *332 Gen. Ins. Co., 660 So.2d 300 (Fla. 4th DCA 1995); see also Starling v. Allstate Floridian Ins. Co., 956 So.2d 511, 513 (Fla. 5th DCA 2007); Fassi v. Amer. Fire & Cas. Co., 700 So.2d 51 (Fla. 5th DCA 1997). The question that arises in this ease is whether an insurer can include in the policy a provision that extends the duty to submit to an EUO to assignees of the insured’s right to insurance proceeds.
Under Florida law, the assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty. See Dependable Ins. Co. v. Landers, 421 So.2d 175, 179 (Fla. 5th DCA 1982). Assignment of a right to payment under a contract does not eliminate the duty of compliance with contract conditions, but a third-party assignee is not liable for performance of any duty under a contract, unless he was a party to the agreement or has become a party by subsequent agreement. Absent such an event, which is in the nature of a novation, the duty of performance of the conditions to the right of payment remains with the assignor.[2] In other words, the assignee of a contract right owes no duty of performance to the obligor.[3]
What that means in the context of this case is that Shaw, as the assignee of the right of the insured to payment under the State Farm insurance contract, had no duty to perform any covenant under the insurance contract because he never agreed to do so. An obligor cannot unilaterally attach conditions to the obligee’s right of assignment and cannot bind the assignee to any performance under the contract unless the assignee has agreed. The assignments in this case are straightforward transfers of the right to receive payment that contain no language of assumption of any duty by the assignee healthcare providers:
I hereby authorize and direct you, my insurance company and/or my attorney, to pay directly to DAVID G. SHAW, DC PA d/b/a CENTRAL FLORIDA CHIROPRACTIC CENTER (“Assignee”), such sums as may be due and owing Assignee for the services rendered to me, both by reason of accident or illness, and by reason of any other bills that are due Assignee, and to withhold such sums from any disability benefits, medical payment benefits, No-Fault benefits, or any other insurance benefits obligated to reimburse me or from any settlement, judgment or verdict on my behalf as may be necessary to adequately protect said Assignee. In the event that I do not have insurance coverage, I understand that I remain personally responsible for payment of services rendered. I hereby further give an irrevocable lien to said assignee against any and all insurance benefits named herein and any and all proceeds of any settlement, judgment or verdict which may be paid to me as a result of the injuries or illness for which I have been treated by the Assignee. This is to act as an assignment of my rights and benefits to the extent of the Assignee’s services provided.
(Emphasis added.) There is simply no good faith argument to be made that, by taking the assignment of insurance proceeds to the extent of medical services rendered and seeking to collect the assigned policy proceeds, Shaw undertook *333 any duty of performance under the State Farm policy. In exchange for services provided, Shaw took the right to be paid “such sums as may be due and owing” under its patient’s insurance policy for the services Shaw rendered.
Another important principle of the law of assignments is that: “As a general rule, the assignee of a non-negotiable instrument takes it with all the rights of the assignor, and subject to all the equities and defenses of the debtor connected with or growing out of the obligation that the obligor had against the assignor at the time of the assignment.” Law Office of David J. Stern, P.A. v. Sec. Nat. Servicing Corp., 969 So.2d 962, 968 (Fla.2007) (quoting State v. Family Bank of Hallandale, 667 So.2d 257, 259 (Fla. 1st DCA 1995)). However, the notion that, because an as-signee “steps into the shoes of the assignor and takes the assignment subject, to all defenses of the obligor,” the assignee assumes the obligations of the assignor, simply misapplies the rule. The rule means that the right of the assignee under the contract is no better than its assignor’s rights. If the assignor is entitled to be paid, the assignee is entitled to be paid, but if the assignor is not entitled to be paid because of some failure of performance on the part of the assignor, then the assignee is not entitled to be paid either. By accepting an assignment of a right to be paid, the assignee does not obligate itself to perform any covenant under the contract. Moreover, as the rule quoted above plainly says, the defenses available to the obligor are fixed as of the time of the assignment, no subsequent duty on the part of the assignee arises because of the assignment.
The ability to assign contractual rights, including the right to payment, is an important commercial mechanism to facilitate transactions and to secure the payment of obligations, but this device would be completely thwarted if the obligor could impose conditions on the exercise of such rights acquired through assignment. There is a reason why there is a vast body of case law on whether a particular right is or is not assignable, but none recognizing the obligor’s right to condition payment of sums due and owing under the contract to the subsequent performance of some contractual duty in the underlying contract.
Here, St. Louis has agreed that whatever monies he is entitled to receive from his automobile insurance policy on account of the care he has been given is payable to Shaw. If no monies are due and owing because of the failure of St. Louis to perform some covenant under the policy, including the examination under oath, then Shaw has no claim against State Farm, precisely because it is subject to State Farm’s defenses against the insured. But State Farm may not include in the insurance contract any requirement of performance on the part of the assignee that conditions the right to payment. To the extent that State Farm’s policy may have such a provision, it is simply unenforceable. It does not matter whether it is the requirement to submit to an examination under oath, to pay a fee, to accept a discount or anything else. Shaw did not undertake any duty of performance, and State Farm cannot unilaterally impose an obligation on the assignee by putting it in the policy.
This very issue has already been considered and decided by the Third District Court of Appeal in Marlin Diagnostics v. State Farm Mutual Automobile Insurance Co., 897 So.2d 469 (Fla. 3d DCA 2004). In Marlin, the Third District reviewed a judgment of dismissal based on the lower court’s determination that State Farm had the right to require a personal injury protection [“PIP”] medical provider to submit to an EUO when that provider had accept *334 ed from State Farm’s insured an assignment of benefits. The policy in Marlin provided that “a person who suffers a bodily injury and makes a claim under the policy shall ‘answer questions under oath’.... ” 897 So.2d at 469. The trial court determined that State Farm had the right to require the appellant to submit to an EUO after accepting the assignment of the insured’s benefits.
The Marlin court reversed, holding that when an insured assigns his benefits to a healthcare provider, the obligation to attend an EUO remains with the insured. The obligation to attend an EUO does not shift to the healthcare provider merely because the insured made an assignment of policy benefits payable to cover the provider’s bill. Id. The Marlin court also noted that the Legislature had expressly dealt with the insurer’s need for information from health care providers who make claims for personal injury benefits by requiring, when requested by the insurance company, that the provider submit a written report of the history, condition, treatment, dates and costs of treatment of the injured person and why the items identified by the insured person were reasonable in amount and medically necessary, together with a sworn statement that the treatment or services rendered were reasonable and necessary with respect to the injury sustained. Id.; see also § 627.736(6)(b), Fla. Stat. (2001). The court pointed out that the statute also gives the insurer permission to petition the court to engage in further discovery.
Prior to Marlin, in Advanced Diagnostics Testing, Inc. v. State Farm Insurance Co., 11 Fla. L. Weekly Supp. C964 (Fla. 11th Cir.Ct. Aug. 17, 2004), the circuit court, sitting in its appellate capacity, had similarly determined that assignee medical providers are not required to attend EUO’s. The facts in Advanced Diagnostics are similar to Marlin and this case. State Farm’s insured assigned his benefits to the appellant, a medical provider treating the insured after an automobile accident. The county court dismissed the provider’s claim because the assignee provider would not submit to an EUO.
In its opinion, the circuit court pointed out that the insured did not assign his insurance policy to the provider, only the right to certain proceeds from his insurance policy. Advanced Diagnostics, 11 Fla. L. Weekly Supp. at C965. Such an assignment could not transfer the insured’s obligation to attend an EUO to the health care provider. When an insured assigns PIP benefits to one or more health care providers, the obligation to attend an EUO remains with the insured. The court noted that State Farm would have had a valid defense against the insured if the insured had not attended a requested EUO, but it would not be a defense against the insured that the health care provider did not attend an EUO. Id. The court observed that, under State Farm’s policy, a claimant is required under the policy not only to submit to an EUO, but also to undergo an independent medical examination, and it would be absurd to consider that the provider would have to submit to such examination. Id. at C965-66.
The Advanced Diagnostics court made an additional point, however, that has become the red herring of this appeal. It observed that neither party in that case had brought to the attention of the court the provision of the policy defining a “person” as a “human being.” The appellate court cautioned in a footnote that, in light of that definition, State Farm and its attorneys could face sanctions if they continued to make the argument that a corporate health care provider is a “person” “making a claim” required to attend an EUO, while *335 its policy explicitly limited the term “person” to human beings. Id. at C966 n. 3.
State Farm has used this piece of the Advanced Diagnostics opinion to set up a straw man, which it then proceeds to knock down with an amendatory endorsement. Suggesting the only reason Marlin and Advanced Diagnostics ruled it was not entitled to an EUO from the medical provider was that their policy limited the EUO obligation to a “person,” State Farm purports to have removed this impediment by amending the policy to add the word “organization.” However, the reason it cannot require an EUO from the medical providers, as Marlin and Advanced Diagnostics make clear, is that Shaw merely agreed to accept an assignment of the monies due St. Louis under the policy; Shaw did not become the “insured” and Shaw did not undertake any duties under the policy. Nothing State Farm can include in its policy can change those facts, and nothing State Farm can put in its policy can unilaterally oblige Shaw to comply with any condition precedent to payment under the policy. It cannot impose the duty of performing an EUO on the assignee of policy proceeds as a condition of making payment under the policy for benefits that became due when their insured underwent medical treatment.
State Farm’s position not only disregards contract law, but also attempts through a policy provision impermissibly to alter Florida’s comprehensive PIP statutory scheme. Section 627.736(5), Florida Statutes (2007), contemplates that an insured can authorize the insurer to pay the provider directly. Details of the payment obligation are closely regulated by the statute. Specifically, section 627.736(6)(b), Florida Statutes (2007), provides an elaborate mechanism for insurers to obtain information from health care providers concerning their treatment and expenses:
Every physician, hospital, clinic, or other medical institution providing, before or after bodily injury upon which a claim for personal injury protection insurance benefits is based, any products, services, or accommodations in relation to that or any other injury, or in relation to a condition claimed to be connected with that or any other injury, shall, if requested to do so by the insurer against whom the claim has been made, furnish forthwith a written report of the history, condition, treatment, dates, and costs of such treatment of the injured person and why the terms identified by the insurer were reasonable in amount and medically necessary, together with a sworn statement that the treatment or services rendered were reasonable and necessary with respect to the bodily injury sustained and identifying which portion of the expenses for such treatment or services was incurred as a result of such bodily injury, and produce forthwith, and permit the inspection and copying of, his or her or its records regarding such history, condition, treatment, dates, and costs of treatment; provided that this shall not limit the introduction of evidence at trial.
It is this statute that governs State Farm’s ability to demand information from health care providers providing medical treatment to its insureds, including the investigation of its suspicions of insurance fraud. The statute even gives an insurance company the statutory right to petition the court to engage in discovery with those medical providers. Subsection (c) of that same statute states:
In the event of any dispute regarding an insurer’s right to discovery of facts under this section, the insurer may petition a court of competent jurisdiction to enter an order permitting such discovery. The order may be made only on motion *336 for good cause shown and upon notice to all persons having an interest, and it shall specify the time, place, manner, conditions, and scope of the discovery. Such court may, in order to protect against annoyance, embarrassment, or oppression, as justice requires, enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires.
The very reason for the existence of this statutory scheme is that the insurers have no right to obtain it otherwise from assignees like Shaw. The Legislature has established a scheme that strikes a balance, under court supervision, between the insurers’ need for information and the burden on health care providers who accept insurance proceeds in lieu of requiring payment from the insured directly. State Farm may prefer to exercise a contractual right to require multiple EUO’s of each health care provider conducted by whomever it chooses, as often as it chooses, but it does not have that right.
Shaw has agreed to accept from St. Louis an assignment of “such sums as may be due and owing.” Until the sums are “due and owing,” Shaw has no right to claim them from State Farm. By the same token, however, once the insured has performed its obligations under the policy, including, if demanded, submission to an EUO, the sums are “due and owing” and there are no more conditions to fulfill — by anybody. The conditions to payment have already been met. As the policy expressly recognizes by classifying the duty to submit to an EUO as an “insured’s dutfy],” the duty can only belong to the insured. The duty was never delegated by St. Louis, and Shaw never agreed to assume it. Both as a matter of contract law and common sense, State Farm’s attempt to impose it on Shaw cannot succeed. Nevertheless, because this en banc decision is' not unanimous and because of the potentially wide-ranging impact of this issue, we certify to the Florida Supreme Court the following question of great public importance:
WHETHER A HEALTH CARE PROVIDER WHO ACCEPTS AN ASSIGNMENT OF NO-FAULT INSURANCE PROCEEDS IN PAYMENT OF SERVICES PROVIDED TO AN INSURED CAN BE REQUIRED BY A PROVISION IN THE POLICY TO SUBMIT TO AN EXAMINATION UNDER OATH AS A CONDITION TO THE RIGHT OF PAYMENT?
JUDGMENT REVERSED and REMANDED; QUESTION CERTIFIED.
MONACO, C.J., ORFINGER, TORPY, LAWSON, EVANDER, COHEN, and JACOBUS, JJ., concur.
SAWAYA, J., dissents, with opinion, in which PALMER, J., concurs.

. One assignment assigned policy benefits to David G. Shaw, D.C., P.A., d/b/a Central Florida Chiropractic Center. This assignment provides as follows:
ASSIGNMENT OF BENEFITS
I hereby authorize and direct you, my insurance company and/or my attorney, to pay directly to DAVID G. SHAW, DCPA d/b/a CENTRAL FLORIDA CHIROPRACTIC CENTER ("Assignee”), such sums as may be due and owing Assignee for the services rendered to me, both by reason of accident or illness, and by reason of any other bills that are due Assignee, and to withhold such sums from any disability benefits, medical payment benefits, No-Fault benefits, or any other insurance benefits obligated to reimburse me or from any settlement, judgment or verdict on my behalf as may be necessary to adequately protect said Assignee. In the event that I do not have insurance coverage, I understand that I remain personally responsible for payment of services rendered. I hereby further give an irrevocable lien to said as-signee against any and all insurance benefits named herein and any and all proceeds of any settlement, judgment or verdict which may be paid to me as a result of the injuries or illness for which I have been treated by the Assignee. This is to act as an assignment of my rights and benefits to the extent of the Assignee’s services provided.
ASSIGNMENT OF CAUSE OF ACTION
In the event my insurance company is obligated to make payments to me upon charges made by the Assignee for its services [but] refuses to make such payments, upon demand by me or Assignee, I hereby assign and transfer to Assignee any and all causes of action, and proceeds from such causes of action, that I might have or that might exist in my favor against such insurance company and authorize the Assignee to prosecute said cause of action either in my name or Assignee’s name and further I authorize Assignee to compromise, settle or otherwise resolve said claim of action as they see fit.
The other assigned benefits to DC Services, LLC. This assignment provides as follows:

Assignment of Benefits/Cause of Action

I hereby assign from any and all automobile policies which provide medical benefits or no-fault benefits, all rights, title and interest to DC Services, LLC. ("Assignee") for payment for services rendered unto me both by reason of accident or illness. In the event the insurance company fails to pay Assignee the full amount owing to As-signee after proper statutory notice, I hereby also assign this instrument, all rights and causes of action in tort, in contract and the laws of Florida, against the personal injury protection carrier for the above named insured/patient for its failure to pay for services rendered unto me by Assignee in relation to my accident or illness. This assignment may only be rescinded [or] reassigned by the mutual consent of the patient/insured/assignor and Assignee.

. Sans Souci v. Div. of Fla. Land Sales & Condos, 421 So.2d 623, 630 (Fla. 1st DCA 1982).

. Dependable Ins. Co. v. Landers, 421 So.2d 175 (Fla. 5th DCA 1982); De La Rosa v. Tropical Sandwiches, Inc., 298 So.2d 471 (Fla. 3d DCA 1974).