[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10816; 10-10819; 10-10813;
10-10817; 10-10818
_____

D.C. Docket No. 6:06-cv-01757-GJK

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2011
JOHN LEY
CLERK

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
STATE FARM FIRE & CASUALTY COMPANY,

Plaintiffs - Counter Defendants - Appellees,

versus

PHYSICIANS INJURY CARE CENTER, INC., et al.,

Defendants,

EARL BYERS,
CARMEN BERDECIA,
ROSE CUMMINGS,
ANDRITA KING-FENN,

Intervenor Defendants - Counter-Claimants - Appellants,

MARGUERITE EVERIDGE,

Intervenor Defendant-Appellant,

JOHN KANZLEMAR,

Intervenor.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(May 23, 2011)

Before MARTIN, FAY, and BLACK, Circuit Judges.

PER CURIAM:

After two jury trials and oral argument on appeal, the parties are familiar with the facts of this case so we only summarize them for our purposes here. In November 2006, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively "State Farm") filed suit against Physicians Injury Care Center, Inc. ("PICC"), Dr. Irving Colvin, and Robert Colvin (collectively "Defendants"). State Farm alleged that the Defendants unlawfully obtained personal injury protection benefits ("PIP benefits") from State Farm by "push[ing] State Farm's insureds through a sham course of treatment and evaluation designed specifically to exhaust the patients' insurance benefits." Under the Florida Motor Vehicle No-Fault Law, insurers are required to provide PIP benefits up to a limit of $10,000 for losses sustained "as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle." Fla. Stat. § 627.736(1). As to medical benefits, insurers must pay "[e]ighty percent of all reasonable expenses for medically necessary

medical, surgical, X-ray, dental, and rehabilitative services." Id. § 627.736(1)(a). State Farm sought to recover the benefits it says were improperly paid to the Defendants under a variety of theories, including common law fraud. State Farm also requested a ruling by way of declaratory judgment that it was not required to pay any charges for treatments rendered by the Defendants that were pending or presented for payment during this litigation.

Before the first jury trial, eight State Farm policyholders intervened in the action as defendants.[1] All the intervenors were injured in automobile accidents and received treatment at PICC. In light of the claims made in this litigation, State Farm declined to pay for those treatments. The intervenors asserted counterclaims against State Farm for, among other things, breach of contract. The first jury trial ended in a mistrial, and the case was tried again in November 2009. The second jury found in favor of State Farm on all counts. The district court denied the Defendants and intervenors' post-trial motions and entered judgment in favor of State Farm. The Defendants and intervenors now appeal.

*1. State Farm's common law fraud claim is not preempted by Fla. Stat. § 627.736(12).*

---

[1] The eight State Farm policyholders who intervened in the action as defendants are: (1) Reidy Williams; (2) Elyse Cottle; (3) Earl Byers; (4) Carmen Berdecia; (5) Marguerite Everidge; (6) Rose Cummings; (7) Jerlean Reed; and (8) Andrita King-Fenn.

The Defendants contend that the district court should have entered judgment in their favor on State Farm's common law fraud claim because that claim is preempted by Fla. Stat. § 627.736(12).[2] That statute creates a civil cause of action on behalf of an insurer "against any person convicted of, or who, regardless of adjudication of guilt, pleads guilty or nolo contendere to insurance fraud under § 817.234 . . . associated with a claim for personal injury protection benefits in accordance with this section." Fla. Stat. § 627.736(12).[3] A prevailing insurer may

---

[2] Before trial, the Defendants moved for summary judgment on State Farm's common law fraud claim on the grounds that it was preempted by Fla. Stat. § 627.736(12). At the close of State Farm's case, the Defendants moved for judgment as a matter of law under Fed. R. Civ. P. 50(a), which the district court denied. After the jury's verdict in favor of State Farm, the Defendants filed a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), which the district court also denied. The Defendants did not raise the preemption argument in either motion.

The Defendants' Joint Notice of Appeal states that they are appealing only the Final Judgment, the Amended Final Judgment, and the "portion of the Order filed on January 21, 2010 denying Defendants' Amended Rule 50(b) Motion for Judgment as a Matter of Law, or in the Alternative, Rule 59(a)(1)(A) Motion for a New Trial." (citation omitted). The Defendants did not appeal the district court's order denying their request for summary judgment on State Farm's common law fraud claim. However, in their initial appellate brief, the Defendants challenge the district court's ruling. State Farm argues that this issue is not reviewable on appeal because a trial on the merits occurred. State Farm relies on Lind v. United Parcel Serv., Inc., 254 F.3d 1281 (11th Cir. 2001), in which we declined to "review the pretrial denial of a motion for summary judgment after a full trial and judgment on the merits." Id. at 1286.

Whether or not the district court's order denying summary judgment is reviewable, we conclude that this issue is subject to appellate review because it is "inextricably intertwined" with noticed issues and State Farm is not prejudiced from its review. See Hill v. BellSouth Telecomms., Inc., 364 F.3d 1308, 1313 (11th Cir. 2004).

[3] Fla. Stat. § 817.234(1)(a)1 makes it a felony for a "person, with the intent to injure, defraud, or deceive any insurer" to, inter alia:

4

recover compensatory, consequential, and punitive damages as well as attorney's fees and costs.  Id.

Under Florida law, "[w]hether a statutory remedy is exclusive or merely cumulative depends upon the legislative intent as manifested in the language of the statute." Thornber v. City of Ft. Walton Beach, 568 So. 2d 914, 918 (Fla. 1990).  "Even where the legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise." State v. Ashley, 701 So. 2d 338, 341 (Fla. 1997); see also Essex Ins. Co. v. Zota, 985 So. 2d 1036, 1048 (Fla. 2008) ("A statute . . . designed to change the common law rule must speak in clear, unequivocal terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard." (quoting Carlile v. Game & Fresh Water Fish Comm'n, 354 So. 2d 362, 364 (Fla. 1977)).  "Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law." Thornber, 568 So. 2d at 918.

---

[p]resent[ ] or cause[ ] to be presented any written or oral statement as part of, or in support of, a claim for payment other benefit pursuant to an insurance policy . . . , knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim.

See also id. § 817.234(11).

The express language of Fla. Stat. § 627.736(12) does not state that it precludes an insurer from bringing a claim for common law fraud. Nor is that statute "so repugnant to the common law that the two cannot coexist." See id.; Thornber, 568 So. 2d at 918. Accordingly, we conclude that Fla. Stat. § 627.736(12) does not preempt an insurer's right to bring a claim for common law fraud.

*2. State Farm's common law fraud claim is not barred by the economic loss rule.*

The Defendants also contend that State Farm's common law fraud claim is barred by Florida's economic loss rule. The economic loss rule is a judicially created doctrine. Generally, the doctrine prohibits tort actions when the only damages suffered are economic losses. Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). The economic loss rule applies "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract."[4] Id. The purpose of the rule is "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Id.

---

[4] The economic loss rule also applies in the circumstance "when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). The parties agree that the products liability economic loss rule does not apply here.

6

The economic loss rule does not preclude tort actions for "intentional or negligent acts that are independent from acts that breach the contract." Brown v. Chamax, LLC., 51 So. 3d 552, 556 (Fla. 2d DCA 2010). Nor does the economic loss rule "bar tort actions based on fraud if the fraud alleged does not relate to an act of performance under the contract but instead relates to a term in the agreement." Id.; see also D & M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 487 (Fla. 4th DCA 2003) ("The test to determine if the economic loss rule applies is to ask if the fraud alleged is an act of performance or in a term of the bargain. When the fraud relates to the performance of the contract the economic loss doctrine will limit the parties to their contractual remedies." (citations and quotation marks omitted)).

In this case, the Defendants argue that they were in privity of contract with State Farm because policyholders assigned their right to payment of PIP benefits to PICC. See Price v. RLI Ins. Co., 914 So. 2d 1010, 1013 (Fla. 5th DCA 2005) ("An assignment is a transfer of all the interests and rights to the thing assigned. The assignee . . . stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name." (quoting Lauren Kyle Holdings, Inc. v. Health-Peterson Constr. Corp., 864 So. 2d 55, 58 (Fla. 5th DCA 2003))). The Defendants assert that the economic loss rule bars State Farm's claim for

7

common law fraud because the alleged fraud related to the payment of PIP benefits, and State Farm's obligation to pay those benefits arose from policyholders' insurance contracts.

"Under Florida law, the assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty." Shaw v. State Farm Fire & Cas. Co., 37 So. 3d 329, 332 (Fla. 5th DCA 2010). This includes the duty of performance under the contract. Id. ("[T]he assignee of a contract right owes no duty of performance to the obligor."). Thus, PICC, as the assignee of the right to payment of PIP benefits, assumed no duty of performance under the policyholders' insurance contracts. Because the economic loss rule applies "[w]hen the fraud relates to the performance of the contract" and PICC assumed no duty of performance through the assignment of benefits, the economic loss rule does not bar State Farm's claim for common law fraud. See D & M Jupiter, 853 So. 2d at 487 (quotation marks omitted).

*3. State Farm presented sufficient evidence to satisfy the elements of common law fraud.*

The Defendants also contend that State Farm failed to establish the elements of common law fraud. The "essential elements" of common law fraud under Florida law are:

8

(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person.

Gandy v. Trans World Computer Tech. Grp., 787 So. 2d 116, 118 (Fla. 2d DCA 2001); see also Tucker v. Mariani, 655 So. 2d 221, 225 (Fla. 1st DCA 1995). The Defendants' arguments focus on the first and fourth elements: material misrepresentation and reliance. As for the first element, State Farm presented the expert testimony of Dr. Root. He testified that PICC did not perform legitimate exams on patients and gave pre-determined diagnoses, such that the treatments that patients received were not medically necessary. Dr. Root's testimony was bolstered by the testimony of two former PICC patients, who stated that their medical files did not accurately reflect their symptoms. State Farm also showed that PICC submitted bills for the medically unnecessary treatments. That evidence was sufficient to show that PICC made false statements of material fact.

As for the fourth element, Timothy Banahan, a legal analyst in State Farm's multi-claim investigative unit, testified that State Farm only pays a claim for PIP benefits if a bill is submitted and that a claim adjuster relies on the accuracy of the bill in processing the claim. Banahan's testimony showed sufficient reliance by State Farm to support the common law fraud claim.

Dr. Colvin and Robert Colvin also challenge State Farm's common law fraud claim against them in their individual capacity. We find the defendants' arguments unavailing. Dr. Colvin developed the treatment protocol that the staff at PICC was required to follow. As PICC's medical director, he also oversaw the medical aspects of the practice, including the hiring and training of PICC's physicians. Although not a doctor, Robert Colvin was responsible for PICC's billing and played an integral role in PICC's operations. Ordinarily, an officer manager's role in business operations would not be sufficient to hold him liable for fraudulent activities conducted by medical professionals. However, in this case the jury was presented with evidence which could support a finding that Robert Colvin actively participated in the fraud by implementing policies that made the fraudulent activities more difficult to discover, such as the shredding of documents and instructing therapists not to sign patients' records. Under the specific facts of this case, we find sufficient evidence to support the jury's verdict. See Howard v. Walgreen Co., 605 F.3d 1239, 1242 (11th Cir. 2010).

4. *The district court did not err by failing to dismiss, or enter judgment as a matter of law on, State Farm's declaratory judgment count.*

The Defendants and the intervenors contend that the district court erred by failing to dismiss, or enter judgment as a matter of law on, State Farm's

declaratory judgment count on the grounds that no actual controversy existed. State Farm based its request for declaratory judgment relief on PICC's alleged common law fraud.[5] See Wendy's Int'l., Inc. v. City of Birmingham, 868 F.2d 433, 435 (11th Cir. 1989) ("[T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather 'is operative only in respect to controversies which are such in the constitutional sense. . . . Thus, the operation of the Declaratory Judgment Act is procedural only.'" (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S. Ct. 461, 463 (1937))). The jury found that State Farm was entitled to a declaration that it was not required to pay PICC and the intervenors for all unpaid charges because the charges were fraudulent.

To establish the existence of an actual controversy within the meaning of the Declaratory Judgment Act, the party invoking a federal court's authority must show: "(1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision." GTE Directories Pub. Corp. v. Trimen Am., Inc., 67 F.3d

---

[5] Intervenor Everidge argues that the district court erred in denying her motion for summary judgment on State Farm's declaratory judgment count. She asserts that the basis for State Farm's declaratory judgment was solely Fla. Stat. § 627.736 and maintains that statute does not apply to her because her policy was issued during the "sunset" period of the PIP statute. The PIP statute was not in effect from October 1, 2007 through December 31, 2007. We find no error because State Farm's declaratory judgment was based on common law fraud, not the PIP statute.

11

1563, 1567 (11th Cir. 1995) (quotation marks omitted); see also Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (showing must be made based on the "state of affairs as of the filing of the complaint" (quotation marks omitted)).

The Defendants and the intervenors argue that State Farm failed to establish the first requirement, an actual or threatened injury. Because common law fraud's elements include justifiable reliance and damages, they assert that State Farm was required to pay PICC's allegedly fraudulent bills in order for declaratory judgment relief to be available. We disagree. "The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action." Cnty. of Mille Lacs v. Benjamin, 361 F.3d 460, 464 (8th Cir. 2004) (quotation marks omitted); see also Canatella v. California, 304 F.3d 843, 852 (9th Cir. 2002) ("[W]hile the plaintiff must show that the feared harm is 'actual or imminent, not conjectural or hypothetical,' '[o]ne does not have to await the consummation of the threatened injury.'" (citations omitted)).

We do not require State Farm to suffer the harm that it sought to avoid in order be entitled to declaratory judgment relief. See GTE Directories, 67 F.3d at 1568 (plaintiff should not be "force[d to subject] itself to potential liability before

12

allowing it to receive a declaratory judgment"). As in GTE Directories, "[State Farm] is not required to take such action for an actual case or controversy to exist." Id.; cf. Michigan Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 923 (11th Cir. 1998) (holding that an insurer is not required to establish reliance on an insured's misrepresentations when asserting a fraud defense to a claim for policy benefits). For this reason, the district court did not err in failing to dismiss, or enter judgment as a matter of law, on State Farm's declaratory judgment action due to a lack of actual controversy.[6]

The Defendants and the intervenors also challenge the district court's declaratory judgment jury instruction. Because State Farm's request for declaratory relief was based on common law fraud, they argue that the jury should have been instructed regarding justifiable reliance and damages. For the reasons we have set out above, this argument does not merit relief.

5. *The Defendants were not entitled to judgment as a matter of law on State Farm's unjust enrichment claim.*

The Defendants next argue that they were entitled to judgment as a matter of law on State Farm's claim for unjust enrichment. They assert that judgment

---

[6] This ruling affirming the judgment on State Farm's declaratory judgment action does not apply to Intervenors Byers, Reed and Williams. For the reasons we set out in our discussion of the breach of contract claims of these three intervenors, we vacate the jury's verdict on the Declaratory Judgment action as to Byers, Reed and Williams alone among the intervenors.

should have been entered in their favor because State Farm had adequate remedies at law. It is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist. Williams v. Bear Stearns & Co., 725 So. 2d 397, 400 (5th DCA 1998). However, that rule does not apply to unjust enrichment claims. Id. "It is only upon a showing that an express contract exists [between the parties] that the unjust enrichment . . . count fails." Id. Thus, to the extent that State Farm did have adequate legal remedies, those remedies did not bar its unjust enrichment claim.

The Defendants also assert that State Farm failed to provide sufficient evidence of damages to support its claim. See Zaleznik v. Gult Coast Roofing Co, 576 So. 2d 776, 779 (Fla. 2d DCA 1991) (explaining that the appropriate measure of damages under an unjust enrichment claim is the fair market value of the goods or services rendered). We disagree. The jury's award was based on competent and substantial record evidence. See Pianeta Miami, Inc. v. Lieberman, 990 So. 2d 551, 554 (Fla. 3d DCA 2008).

Finally, Dr. Colvin and Robert Colvin challenge State Farm's unjust enrichment claims against them in their individual capacity. They argue that State Farm failed to establish that a benefit was conferred on them individually. The Colvins were the sole shareholders of PICC and were heavily involved in PICC's

14

operations. Robert Colvin served as the chief executive officer, president, vice president, secretary, and treasurer of PICC and was also responsible for all of its administrative operations, including billing. Dr. Colvin served as PICC's medical director and was responsible for hiring and training other physicians. We conclude that the facts presented to the jury provided sufficient evidence of a benefit conferred to support unjust enrichment claims against the Colvins in their individual capacities.

### 6. *State Farm's FDUTPA claim was proper.*

The Defendants also contend that judgment should have been entered in their favor on State Farm's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"). They argue that, pursuant to Fla. Stat. § 501.212(4)(a), State Farm may not bring a FDUPTA claim. The Defendants also argue that State Farm failed to prove actual damages. See Dorestin v. Hollywood Imports, Inc., 45 So. 3d 819, 824 (Fla. 4th DCA 2010) ("Proof of actual damages is necessary to sustain a FDUTPA claim.").

We reject the Defendants' arguments. The express language of Fla Stat. § 501.212(4)(a) creates a specific exemption from suit under FDUPTA for "[a]ny person or activity regulated under laws administered by . . . [t]he Office of Insurance Regulation of the Financial Services Commission." Florida courts

15

resolve questions about the applicability of this provision by looking to the activity which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of the Office of Insurance Regulation. See W.S. Badcock Corp. v. Myers, 696 So. 2d 776, 782–83 (Fla. 1st DCA 1996). Because the conduct of which State Farm complains in this lawsuit is not a type regulated by the Office of Insurance Regulation, the exemption of Fla. Stat. § 501.212(4)(a) does not apply. We also find that State Farm presented sufficient evidence of actual damages by its showing that the medical services rendered by the Defendants to patients were unnecessary and thus without value to State Farm. See Tri-County Plumbing Servs., Inc. v. Brown, 921 So. 2d 20, 22 (Fla. 3d DCA 2006).

*7. State Farm's failure to obtain a physician's report before the withdrawal of payment to PICC for claims submitted on behalf of Byers, Reed, and Williams made the withdrawal ineffective and improper.*

Intervenors Byers, Reed, and Williams received treatments at PICC before State Farm filed its complaint in this case in November 2006. For each of these intervenors, State Farm paid at least one bill submitted by PICC and then, based on the claims made in this litigation, declined to make future payments. The intervenors argue that State Farm's withdrawal of payment was ineffective and improper because State Farm did not first obtain a physician's report in

16

accordance with Fla. Stat. § 627.736(7)(a).  See Partners in Health Chiropractic v. United Auto. Ins. Co., 21 So. 3d 858, 864 (Fla. 3d DCA 2009) ("[W]here an insurer withdraws (that is, terminates) payments being made to a treating physician or withdraws or terminates authorization for further treatment by a treating physician, a section 627.736(7)(a) report must first be obtained."); State Farm Mut. Auto Ins. Co. v. Hyma Med. Ctr., Inc., 22 So. 3d 699, 701 (Fla. 3d DCA 2009) ("In a withdrawal case the insurer has made payments but then seeks to withdraw all future payments for the same injury.  In that situation, [Fla. Stat. § 627.736](7)(a) sets forth the necessary requirements that an insurer must satisfy before it may withdraw future PIP benefits." (quotation marks omitted)).  That statute provides, in relevant part:

> Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection insurance benefits, such person shall, upon the request of an insurer, submit to mental or physical examination by a physician or physicians. . . .  An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a valid report by a Florida physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn stating that the treatment was not reasonable, related, or necessary.

Fla. Stat. § 627.736(7)(a) (emphasis added).

17

State Farm argues that the report requirement in Fla. Stat. § 627.736(7)(a) is only triggered when an insured's mental or physical condition is material to the insurer's decision to withdraw payment. State Farm asserts that it withdrew payment on Byers, Reed, and Williams' claims because of the Defendants' fraud—not the intervenors' individual mental or physical condition. Based on this reading of the statute, State Farm maintains that it was not required to obtain a physician's report before withdrawing payment. State Farm also asserts that Fla. Stat. § 627.736(7)(a) does not apply in this case because PICC has no right to payment of the fraudulent bills. We address each argument in turn.

"As always with questions of statutory interpretation, our inquiry begins with the plain language of the statute." United States v. Townsend, 630 F.3d 1003, 1011 (11th Cir. 2011); see also Reeves v. Asture, 526 F.3d 732, 734 (11th Cir. 2008) ("Statutory interpretation begins and ends with the text of the statute so long as the text's meaning is clear."). "In determining whether a statute is plain or ambiguous, we consider the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." Bankston v. Then, 615 F.3d 1364, 1367 (11th Cir. 2010) (quotation marks omitted). State Farm's argument conflates portions of Fla. Stat. § 627.736(7)(a). Nothing in the plain language of the statute suggests that the materiality requirement in the first

sentence is a condition precedent to an insurer's obligation to obtain a physician's report before withdrawing payment.

Our conclusion that an insurer is required to obtain a physician's report before withdrawing payment regardless of whether the insured's physical or mental condition is material to the insurer's decision is bolstered by the title of § 627.736(7)(a): Mental and physical examination of injured person; reports. The semi-colon dividing the subjects suggests that they are separate topics covered in the statutory provision. Our reading of the statute requires State Farm to obtain a physician's report in accordance with § 627.736(7)(a) before withdrawing payment on the intervenors' claims. See United Auto. Ins. Co. v. Viles, 726 So. 2d 320, 321–22 (Fla. 3d DCA 1999) (concluding that insurer's failure to obtain a physician's report as required by § 627.736(7)(a) before withdrawing payment rendered the termination of payment ineffective).

We also reject State Farm's argument that § 627.736(7)(a) does not apply here because PICC has no right to payment of the fraudulent bills. State Farm reasons that because the intervenors are not liable for the bills submitted by PICC, it did not have to comply with § 627.736(7)(a). Even accepting that the intervenors have no liability for the bills, this would not obviate State Farm's obligation to comply with the statutory requirements for the withdrawal of

19

payment. As in <u>Viles</u>, State Farm's termination of payment as to Byers, Reed, and Williams was ineffective and improper. <u>See</u> 726 So. 2d at 321–22.

For the forgoing reasons, we conclude that Byers, Reed, and Williams are entitled to judgment as a matter of law on their breach of contract counterclaims and we remand for a determination of the issue of their damages.

*8. The district court did not err in denying the intervenors' motion for judgment as a matter of law on their breach of contract counterclaims.*[7]

The intervenors contend that the district court erred in failing to enter judgment as a matter of law in their favor on their breach of contract counterclaims. "The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." <u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

State Farm presented evidence at trial that all of the services rendered by PICC were fraudulent. Dr. Root testified that he had reviewed the files of all 957 patients involved in this case and that none of the treatments provided to patients by PICC were medically necessary. The intervenors' insurance policies only required State Farm to pay for medical services that were medically necessary. Dr.

---

[7] In this section of the opinion, we do not address the breach of contract counterclaims asserted by Byers, Reed, and Williams.

Root's testimony was sufficient to support the jury's finding for State Farm on the intervenors' breach of contract counterclaims. Thus, the district court's denial of the intervenors' motion for judgment as a matter of law was not error. See Nurse "BE" v. Columbia Palms West Hosp. Ltd. P'ship, 490 F.3d 1302, 1308 (11th Cir. 2007) (explaining that when reviewing the denial of a Rule 50 motion, "we draw all inferences in favor of the non-moving party and affirm the jury verdict unless there is no legal basis upon which the jury could have found for [the plaintiff]." (quotation marks omitted)).

### 9. The district court did not abuse its discretion by denying Reed's post-verdict motion for declaratory relief

Intervenor Reed contends that the district court abused its discretion by denying her motion for judgment as a matter of law, in which she sought a post-verdict declaratory judgment that she was not entitled to any restoration of PIP benefits paid to PICC on her behalf. The district court denied her motion, concluding that Reed did not litigate that issue at trial and that State Farm had not consented to the declaration. See Cioffe v. Morris, 676 F.2d 539, 541–42 (11th Cir. 1982). After review, we conclude that the district court's denial of Reed's motion was not an abuse of discretion.

### 10. Conclusion

21

For the foregoing reasons, we affirm the jury's verdict with the exception of Byers, Reed, and Williams' counterclaims for breach of contract, and State Farm's declaratory judgment claim against these three intervenors. The district court shall enter judgment in Byers, Reed, and Williams' favor on these claims and determine any damages. Finally, the Defendants and the intervenors' motions to certify questions to the Florida Supreme Court are DENIED.

AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.