[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14240
_____

D.C. Docket No. 6:04-cv-00698-JA-DAB

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 4, 2012
JOHN LEY
CLERK

COX ENTERPRISES, INC.,
a Delaware corporation,

Plaintiff-Appellee,

versus

PENSION BENEFIT GUARANTY CORPORATION,
United States Government Agency,

Interested Party-Appellant.

_____

No. 10-14305
_____

D.C. Docket No. 6:04-cv-00698-JA-DAB

COX ENTERPRISES, INC.,
a Delaware corporation,

Plaintiff-Appellee,

versus

MARC L. DAVIDSON,
JULIA DAVIDSON TRUILO,
ROBERT TRUILO,

                                        Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(January 4, 2012)

Before MARCUS, WILSON, and COX, Circuit Judges.

COX, Circuit Judge:

Marc L. Davidson, Julia Davidson Truilo, Robert Truilo (the "Davidson Directors"), and the Pension Benefit Guaranty Corporation ("PBGC") appeal following the district court's order to distribute all of News-Journal Corporation's ("News-Journal") assets to Cox Enterprises, Inc. ("Cox"), a long-time shareholder of the closely-held News-Journal. Cox sued News-Journal in response to perceived abuses by News-Journal's directors in the handling of corporate assets, invoking the court's diversity jurisdiction. To avoid a possible dissolution, News-Journal elected to repurchase Cox's shares. Between the valuation of those shares and the court ordered date for payment, News-Journal's ability to pay diminished significantly. In response, the district court appointed a receiver to manage News-Journal and prepare

2

it for sale. After the sale of News-Journal's assets, the receiver solicited claims from News-Journal's various creditors. The district court disposed of these competing claims for News-Journal's limited assets by ordering the distribution of all the assets to Cox as payment for its shares.

After thorough review, we vacate this order by the district court. We interpret Florida's election-to-purchase statute to require that any payment made as a result of a corporation's share repurchase decision comply with the distribution requirements of Fla. Stat. § 607.06401, which prohibits the distribution of corporate assets to a shareholder if it would render the corporation insolvent. Because we consider any payment to Cox a distribution to a shareholder within the meaning of § 607.06401, the district court erred when it ordered the distribution of all of News-Journal's assets to Cox without applying the insolvency test contained in § 607.06401. If on remand the district court finds a distribution to Cox would violate this section, News-Journal's other creditors should receive payment before any distribution is made to Cox.

## I.    FACTS AND PROCEDURAL HISTORY

Cox, a minority shareholder of News-Journal, filed suit in May of 2004 seeking relief for misuse of corporate funds and waste of corporate assets. This suit triggered Florida's election-to-purchase statute, Fla. Stat. § 607.1436. News-Journal elected

3

to pursue the option created by the statute to repurchase Cox's shares. Because the parties could not agree on the fair market value of Cox's shares, the statute required that the district court determine their value. The court set the value of Cox's shares at $129.2 million and directed the terms of payment in a September 27, 2006 order (the "September 2006 repurchase order").

Following the dictates of the election-to-purchase statute, the repurchase order dismissed Cox's original complaint for waste of corporate assets. It also directed that News-Journal pay Cox in installments; the first payment of $29.2 million was due within ten days of the issuance of this court's mandate if an appeal was taken from the order. The district court's order also imposed certain affirmative and negative covenants on the operation of News-Journal intended to prevent News-Journal from wasting corporate assets, dissolving, or engaging in business dealings that might jeopardize News-Journal's ability to pay Cox. The parties challenged the repurchase order on appeal in 2007, but this court affirmed. *See Cox Enters., Inc. v. News-Journal Corp.*, 510 F.3d 1350, 1361 (11th Cir. 2007). Specifically, News-Journal objected to the district court's valuation of Cox's stock. Cox challenged the court's refusal to include compensation for News-Journal's past misconduct and its refusal to award prejudgment interest. *Id.* at 1352. After the denial of News-Journal's request for en banc review, this court's mandate issued on April 9, 2008.

4

While the issuance of the mandate triggered the ten-day period for payment contained in the repurchase order, the district court extended this deadline at the request of both parties to allow time for an attempted joint sale of News-Journal to satisfy its liability to Cox. But, in an April 17, 2009 order, the court terminated the joint-sale process, commencing the ten-day period for News-Journal to make its initial installment payment or file notice of its intent to adopt articles of dissolution. That same order appointed a receiver to manage News-Journal's business and safeguard its assets "pending the consummation of a sale." (R.25-507 at 2.) After entry of this order, News-Journal neither made a payment to Cox nor adopted articles of dissolution.

By January 2010, the receiver and Cox sought the district court's approval to sell News-Journal's publishing operations for just over $20 million. The court approved the sale and instructed the receiver to notify potential creditors of their right to file claims in the receivership. Cox filed a claim for the $129.2 million due under the September 2006 repurchase order plus accrued interest. PBGC claimed $26.5 million for deficiencies in News-Journal's maintenance and funding of its pension plan. The Davidson Directors sought indemnification for pending and any future claims against them with respect to their activities as officers, directors, and employees of News-Journal. Director Robert Truilo filed a claim for $91,153.59

5

based on his contributions to a "rabbi trust" established for the benefit of News-Journal employees. Claims were also filed by other creditors.

The receiver rejected the majority of the claims and recommended that News-Journal's assets be distributed to Cox to satisfy the September 2006 repurchase order.[1] PBGC and the Davidson Directors filed objections, but the district court overruled these objections and awarded all of News-Journal's assets to Cox as payment for its shares. This appeal followed.

## II.   ISSUES ON APPEAL

PBGC and the Davidson Directors present the following issues on appeal: (1) whether the district court's order to distribute News-Journal's assets to Cox complied with Fla. Stat. § 607.1436, Florida's election-to-purchase statute; (2) whether the district court erred by granting Cox an equitable first priority claim to News-Journal's assets to the exclusion of News-Journal's other creditors; (3) whether the district court erred by denying Robert Truilo's claim for the contributions he made to a rabbi trust; (4) whether the district court erred by denying the Davidson Directors' claim for indemnification; and (5) whether the district court erred by denying PBGC an

---

[1] The receiver recommended that all of News-Journal's assets be distributed to Cox except for $347,639.70 in satisfaction of various claims filed with the receiver. Cox agreed to relinquish its claim to this cash to satisfy these other claims. Because the district court found that all of News-Journal's assets should be distributed to Cox, it interpreted this $347,639.70 as a distribution from Cox's own recovery of News-Journal's assets.

6

offset from News-Journal's future tax refunds based on the Federal Debt Collection Act.

## III.    STANDARD OF REVIEW

The district court's distribution of assets in a receivership is an equitable decision that we review for abuse of discretion. *See Godfrey v. BellSouth Telecomms., Inc.*, 89 F.3d 755, 757 (11th Cir. 1996) ("Equitable remedies will not be disturbed unless the District Court abused its discretion or made an error of law . . . ." (citing *Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller*, 934 F.2d 1462, 1471 (11th Cir. 1991))).  However, the court's underlying interpretation of Florida statutes "is a 'purely legal issue' that is reviewed *de novo*." *Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1343 (11th Cir. 2008) (quoting *Estate of Shelfer v. C.I.R.*, 86 F.3d 1045, 1046 (11th Cir. 1996)).[2]

## IV.    DISCUSSION

A.  Florida's Election-to-Purchase Statute, Fla. Stat. § 607.1436

Florida law contains a detailed statutory scheme which creates an alternative to dissolution in derivative suits by shareholders against corporations.  The election-

---

[2]  While at one time circuit courts would afford deference in diversity cases to a district court's interpretation of the law of the state in which it sits, the Supreme Court rejected this approach and held that the proper standard of review was de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231, 111 S. Ct. 1217, 1221 (1991).

to-purchase statute allows a corporation or other shareholders to avoid dissolution by purchasing the shares of the petitioning shareholder who initiated a dissolution proceeding. After a corporation has elected to repurchase all of the shares owned by the petitioning shareholder, the parties may agree upon the value of the shares. Fla. Stat. § 607.1436(3) ("If, within 60 days after the filing of the first election, the parties reach agreement as to the fair value and terms of the purchase of the petitioner's shares, the court shall enter an order directing the purchase of petitioner's shares upon the terms and conditions agreed to by the parties."). If the parties cannot agree on the value, then the court must determine the "fair value"[3] and enter an order detailing the terms for the repurchase fixed by the court. These terms might include payment of the purchase price in installments or the provision for security "to assure payment of

---

[3] Section 607.1436(4) states,

> If the parties are unable to reach an agreement as provided for in subsection (3), the court, upon application of any party, shall stay the s. 607.1430 proceedings and determine the fair value of the petitioner's shares as of the day before the date on which the petition under s. 607.1430 was filed or as of such other date as the court deems appropriate under the circumstances.

Fla. Stat. § 607.1436(4).

8

the purchase price." Fla. Stat. § 607.1436(5).[4]  Once the court's repurchase order

becomes final the corporation has ten days to purchase the petitioning shareholder's

shares unless it files with the court a notice of its intent to adopt articles of

dissolution.   Fla. Stat. § 607.1436(7) ("The purchase ordered pursuant to

subsection (5) shall be made within 10 days after the date the order becomes final

unless, before that time, the corporation files with the court a notice of its intention

to adopt articles of dissolution . . . .").

This repurchase order also triggers Fla. Stat. § 607.1436(6), which explains the

effect of the repurchase order on the petitioning shareholder.  It states:

> Upon entry of an order under subsection (3) or subsection (5), the court
> shall dismiss the petition to dissolve the corporation under s. 607.1430
> and the petitioning shareholder shall no longer have any rights or status
> as a shareholder of the corporation, except the right to receive the
> amounts awarded by the order of the court, which shall be enforceable
> in the same manner as any other judgment.

Fla. Stat. § 607.1436(6).  As this subsection makes clear, a corporation faced with a

petition for dissolution has an incentive to elect to repurchase the petitioning

---

[4] More specifically, after the court determines the fair value of the shares it must, enter an order directing the purchase upon such terms and conditions as the court deems appropriate, which may include payment of the purchase price in installments, when necessary in the interests of equity, provision for security to assure payment of the purchase price and any additional costs, fees, and expenses as may have been awarded, and, if the shares are to be purchased by shareholders, the allocation of shares among such shareholders. Fla. Stat. § 607.1436(5).

9

shareholder's shares because it terminates the petitioning shareholder's petition for dissolution. In exchange for giving up this right, the petitioning shareholder has the right to receive the payment awarded in the repurchase order, "which shall be enforceable in the same manner as any other judgment." Fla. Stat. § 607.1436(6).

The statute, however, places an important condition on these payments. Subsection (8) provides: "Any payment by the corporation pursuant to an order under subsection (3) or subsection (5), other than an award of fees and expenses pursuant to subsection (5), is subject to the provisions of s. 607.06401." Fla. Stat. § 607.1436(8). Therefore payments made pursuant to a repurchase order must comply with Fla. Stat. § 607.06401, which governs the distribution of corporate assets to shareholders.

This distributions-to-shareholders statute creates a scheme focused on the corporation's solvency to evaluate the propriety of distributions to shareholders. It provides in part:

> No distribution may be made if, after giving it effect: (a) The corporation would not be able to pay its debts as they become due in the usual course of business; or (b) The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

10

Fla. Stat. § 607.06401(3). Section 607.06401, by placing restrictions on the distribution of corporate assets, maintains the fundamental tenet of corporate law that creditors' claims on corporate assets are superior to claims of shareholders. To achieve this, a distribution of corporate assets to a shareholder must not result in the violation of one of these insolvency tests contained in Fla. Stat. § 607.06401(3). The statute also explains when to measure the effect of a distribution; in other words, at what point in time must a distribution pass one of these insolvency tests. It requires:

> *Except as provided in subsection (8)*, the effect of a distribution under subsection (3) is measured:
>> (a) In the case of distribution by purchase, redemption, or other acquisition of the corporation's shares, as of the earlier of:
>>> 1. The date money or other property is transferred or debt incurred by the corporation, or
>>> 2. The date the shareholder ceases to be a shareholder with respect to the acquired shares . . . .

Fla. Stat. § 607.06401(6) (emphasis added). The exception contained in § 607.06401(8) contains a different timing provision. It provides, "If the indebtedness is issued as a distribution, each payment of principal or interest is treated as a distribution, the effect of which is measured *on the date the payment is actually made*." Fla. Stat. § 607.06401(8) (emphasis added). Thus any payment made pursuant to a repurchase order must satisfy the insolvency test of the

11

distributions-to-shareholders statute judged at the time dictated by the distributions-to-shareholders statute.

With these specific statutory provisions of Fla. Stat. § 607.1436 and § 607.06401 in mind, the overall scheme envisioned by the election-to-purchase statute may be summarized as follows: First, if a shareholder petitions the court for dissolution of a corporation, the corporation may elect to purchase the petitioning shareholder's shares for fair value. Once the corporation makes this election and the court determines the value of the shares, the court will enter a repurchase order fixing the terms for payment of the shares. After this repurchase order becomes final, a corporation has ten days to make payment for the shares unless it files with the court a petition for dissolution of the corporation. But, under subsection (8) any payment by the corporation pursuant to the court's repurchase order must comply with Florida's distributions-to-shareholders statute. That statute essentially provides that corporate assets may not be distributed to shareholders if the distribution would render the corporation insolvent. This case is before us because between the court's entry of its repurchase order and the time when payment became due, News-Journal's ability to pay the price contained in the repurchase order diminished significantly.

B. The District Court's Interpretation of the Election-to-Purchase Statute, Fla. Stat. § 607.1436

The Davidson Directors and PBGC primarily argue on appeal that the district court misinterpreted Florida's election-to-purchase statute when it ordered the distribution of News-Journal's assets to Cox. The district court decided to read subsection (8), which requires that a payment made pursuant to the repurchase order comply with Florida's distributions-to-shareholders statute,[5] in conjunction with subsection (7), which allows a board of directors to adopt articles of dissolution instead of making payment pursuant to the repurchase order.[6] According to the district court, when these two provisions are read together, dissolution is the only option for a corporation if making a payment pursuant to a subsection (5) repurchase order would violate the insolvency test in the distributions-to-shareholders statute. By neither making a payment nor filing articles of dissolution, the district court held that News-Journal "made the implicit decision to make the payment directed by the Court under subsection (5) and must bear the consequences—if any—for this action."

---

[5] Subsection (8) states, "Any payment by the corporation pursuant to an order under . . . subsection (5) . . . is subject to the provisions of s. 607.06401." Fla. Stat. § 607.1436(8).

[6] Subsection (7) states, "The purchase ordered pursuant to subsection (5) shall be made within 10 days after the date the order becomes final unless, before that time, the corporation files with the court a notice of its intention to adopt articles of dissolution." Fla. Stat. § 607.1436(7).

13

(R.32-674 at 7.) It then ordered the distribution of News-Journal's remaining assets to Cox as a payment pursuant to the September 2006 repurchase order.

Both the Davidson Directors and PBGC argue this interpretation violates the plain meaning of subsection (8). They contend that to distribute News-Journal's assets to Cox (a News-Journal shareholder) pursuant to the repurchase order would render News-Journal insolvent, and that the distributions-to-shareholders statute as cross-referenced by subsection (8) forbids this payment. Furthermore, they suggest the district court order violates the fundamental principle of corporate law that equity should be paid last in the event of corporate insolvency. Cox responds that the district court correctly decided that News-Journal made an implicit decision to pay Cox the sum due under the September 2006 repurchase order. In the alternative, Cox argues subsection (8) does not apply in this case because the claim they submitted to the receiver was not for payment to a shareholder, but instead a claim that sought enforcement of Cox's rights as a creditor. Entry of the repurchase order, Cox says, terminated its status as a shareholder and gave it the right to enforce the September 2006 repurchase order "in the same manner as any other judgment." Fla. Stat. § 607.1436(6).

C. Application of the Election-to-Purchase Statute, Fla. Stat. § 607.1436

This case presents the question of whether Florida's election-to-purchase statute forbids the distribution of corporate assets made pursuant to a repurchase order when doing so would give a former shareholder priority over a corporation's other creditors and render the corporation insolvent. The Florida courts have not addressed this question. We show why, as a matter of statutory construction, the district court erred by directing the distribution of News-Journal's assets to Cox without deciding whether this distribution complied with the distributions-to-shareholders statute. Then, we conclude that our interpretation can be reconciled with other seemingly conflicting portions of the election-to-purchase statute.

When interpreting a statute, we give effect to the Florida legislature's intent and accord meaning to all parts of the statute. *See Larimore v. State*, 2 So. 3d 101, 106 (Fla. 2008) ("A court's purpose in construing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction." (citing *Bautista v. State*, 863 So. 2d 1180, 1185 (Fla. 2003))); *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992) ("Where possible, courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another."). When the language of a statute is plain and unambiguous we must apply that meaning. *Gomez v. Vill. of Pinecrest*, 41 So.

15

3d 180, 185 (Fla. 2010) ("As this Court has often repeated, when the language of the statute is clear and unambiguous and conveys a clear and definite meaning . . . the statute must be given its plain and obvious meaning." (alteration in original) (quoting *Velez v. Miami-Dade Cnty. Police Dep't*, 934 So. 2d 1162, 1164-65 (Fla. 2006))).

As the appellants advocate and the district court acknowledged, a plain reading of subsection (8) prohibits a distribution to Cox to the extent this distribution would violate Florida's distributions-to-shareholders statute. As explained above, that statute prohibits distributions to a shareholder if, after giving the distribution effect, the corporation would be insolvent. Fla. Stat. § 607.06401(3). Following the plain meaning of subsection (8) in this case would have required the district court to decide whether a payment could be made to Cox in compliance with the distributions-to-shareholders statute. The district court rejected this course.

Rather than apply a literal interpretation of subsection (8), the court held that News-Journal's directors, by neither paying Cox nor filing articles of dissolution, had made an implicit decision to pay Cox for its shares. The court then ordered the distribution of News-Journal's assets to effectuate the directors' implicit decision. This interpretation, however, does violence to the basic principle of statutory interpretation that when the language of a statute is plain, the court should follow the plain language. The district court apparently avoided this construction because it

16

recognized that following the plain language in this case might result in the petitioning shareholder, Cox, receiving nothing. But, by subjecting payments made with corporate assets pursuant to a repurchase order to a solvency test, the Florida legislature must have anticipated precisely this result. The legislative scheme, in some circumstances, precludes payment to a shareholder pursuant to a repurchase order.

Despite the district court's interpretation, subsection (7) does not dictate a different result. While subsection (7) affords directors the *voluntary* option to file articles of dissolution after the repurchase order becomes final, it does not force directors to make a payment due under a repurchase order in violation of subsection (8). We, therefore, do not conclude that the News-Journal directors implicitly decided to pay Cox in violation of the distributions-to-shareholders statute. Rather we recognize the course chosen by the Florida legislature—in some circumstances, subsection (8)'s requirement that a payment comply with the distributions-to-shareholders statute will act to bar payments that would otherwise be due under a subsection (5) repurchase order.

The district court also suggested the repurchase order gave Cox a security interest. It stated, "Though not expressly stated in the September 27, 2006 Order, the Court's intent in entering the positive and negative covenants was to provide security

17

for Cox's award . . . ." (R.32-674 at 7.)  Cox and the district court also suggest Cox has an equitable interest in News-Journal's assets.  Cox argues that the "September 27, 2006 [repurchase] order imposed an equitable lien on [News-Journal's] assets in favor of Cox."  (Appellee's Brief at 18.)  Similarly, the district court in its order distributing News-Journal's assets to Cox stated that "Cox has an equitable first priority claim to all of the assets to be distributed up to the extent of its judgment" and that "Cox has continued to hold an equitable right to receive the assets of [News-Journal] otherwise not encumbered as of the September 27, 2006 Order." (R.32-674 at 7.)  It is unnecessary for us to resolve whether the September 2006 repurchase order gave Cox an equitable lien on News-Journal's assets because no distribution to Cox can violate subsection (8), irrespective of security or of an equitable lien.

Cox presents a variety of arguments which suggest our reading of subsection (8) is incompatible with other subsections of the statute.  The subsections that Cox finds incompatible with subsection (8) have not yet been interpreted by Florida courts.  But we think they can be harmonized with our construction.  *See McGhee v. Volusia Cnty.*, 679 So. 2d 729, 730 n.1 (Fla. 1996) ("The doctrine of in pari materia requires the courts to construe related statutes together so that they

illuminate each other and are harmonized." (citing *Singleton v. Larson*, 46 So. 2d 186 (Fla.1950))).

Cox argues that subsection (8) should not even apply in this case because its claim to the receiver "was not a payment as a shareholder, but the enforcement of its rights as a creditor to enforce a judgment." (Appellee's Brief at 35 n.13.) This highlights an arguable conflict between § 607.1436(6) and (8). Subsection (6) states that "Upon entry of an order under . . . subsection (5) . . . the petitioning shareholder shall no longer have any rights or status as a shareholder of the corporation . . . ." Fla. Stat. § 607.1436(6). Yet, the distributions-to-shareholders statute cross-referenced by subsection (8) only governs distributions to shareholders. *See* Fla. Stat. § 607.06401(1) ("A board of directors may authorize and the corporation may make distributions to its shareholders subject to . . . the limitations in subsection (3)."). So, the argument goes, subsection (8) does not apply to a payment to Cox because subsection (6) terminated Cox's status as a shareholder.

We reject Cox's construction regarding its status as a shareholder for the purposes of the distributions-to-shareholders statute because it would render subsection (8) inapplicable in any case. *See, e.g.*, *Forsythe*, 604 So. 2d at 456 ("It is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless."). Instead, we give meaning to both

19

subsections (6) and (8) by recognizing Cox's continued status as a shareholder for purposes of the distributions-to-shareholders statute but construing subsection (6) to eliminate other rights Cox held as a shareholder. We hold that Cox qualifies as a shareholder for purposes of the distributions-to-shareholders statute.

Cox next heralds subsection (6)'s provision that states a repurchase order "shall be enforceable in the same manner as any other judgment." Fla. Stat. § 607.1436(6). Cox maintains that under this provision it has a claim to News-Journal's assets as a judgment creditor. A proper construction of subsection (6) requires a closer inspection of the nature of the repurchase option created by the election-to-purchase statute. Thus far, we have focused on the fact that the corporation has the option to purchase the petitioning shareholder's shares in the event of a petition for dissolution. However, under the election-to-purchase statute, *shareholders* also have the option to purchase the petitioning shareholder's shares if the corporation does not. *See* Fla. Stat. § 607.1436(1) ("[T]he corporation may elect or, if it fails to elect, one or more shareholders may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares."). The implication of the fact that either shareholders or the corporation may repurchase the petitioning shareholder's shares is that the election-to-purchase scheme operates differently depending on the purchaser. For example, subsection (8) only applies in the event of repurchase by the corporation.

20

It has no effect in the event of a shareholder repurchase because subsection (8) only deals with distributions by the corporation. *See* Fla. Stat. § 607.1436(8) ("Any payment by the *corporation* pursuant to an order under . . . subsection (5) . . .is subject to the provisions of s. 607.06401." (emphasis added)). This distinction guides our construction of subsection (6).

In the event a petitioning shareholder seeks to enforce a repurchase order against a *shareholder* who has repurchased shares, it may do so "in the same manner as any other judgment." Fla. Stat. § 607.1436(6). But this case involves repurchase by the corporation. Here, because the *corporation* has repurchased Cox's shares, we must interpret subsection (6) in conjunction with subsection (8). As we have explained, while subsection (8) would have no application in the event of a shareholder repurchase, subsection (8) makes *any payment by the corporation* subject to the distributions-to-shareholders statute. Thus, the petitioning shareholder may enforce the repurchase order only to the extent allowed by subsection (8). If enforcing Cox's repurchase order would require a payment by News-Journal in violation of the distributions-to-shareholders statute, the statute forbids the payment.

We hold that any payment to Cox based on the district court's September 2006 repurchase order must comply with the condition of § 607.1436(8) that the payment

21

satisfy Florida's distributions-to-shareholders statute. This requires that we consider the application of that statute to this case.

### D. Date to Measure News-Journal's Insolvency Under Fla. Stat. § 607.06401

As mentioned previously, Florida's distributions-to-shareholders statute forbids distributions by the corporation to shareholders if those distributions would render the corporation insolvent. The parties here dispute when the court should evaluate News-Journal's insolvency. Cox asserts that News-Journal's solvency should be measured as of September 2006 based on § 607.06401(6), which states that the effect of a distribution is generally measured on the date the corporation incurs a debt or the date a shareholder ceases to be a shareholder.[7] PBGC suggests that § 607.06401(8) requires solvency be measured on the date of payment. As we have already highlighted, § 607.06401(6) applies "[e]xcept as provided in subsection (8)." If subsection (8) applies in this case, then PBGC correctly recognizes that the effect of a distribution to Cox is measured on the date of payment.

---

[7] Subsection (6) states, "Except as provided in subsection (8), the effect of a distribution under subsection (3) is measured:

    (a)    In the case of distribution by purchase, redemption, or other acquisition of the corporation's shares, as of the earlier of:

        1.    The date money or other property is transferred or debt incurred by the corporation, or

        2.    The date the shareholder ceases to be a shareholder with respect to the acquired shares . . . ."

Fla. Stat. § 607.06401(6).

Section 607.06401(8) provides, "If the indebtedness is issued as a distribution, each payment of principal or interest is treated as a distribution, the effect of which is measured on the date the payment is actually made." Fla. Stat. § 607.06401(8). PBGC contends that the court's September 2006 repurchase order created an indebtedness by News-Journal to Cox so News-Journal's solvency should be measured on the date of payment. We agree. Once the district court's September 2006 repurchase order became final, News-Journal had a debt of $129.2 million owed Cox to be paid in regular installments. This indebtedness of News-Journal triggered the timing provision of § 607.06401(8). Thus, on remand, the district court must consider whether a payment to Cox would comply with the insolvency test of the distributions-to-shareholders statute at the time of payment to Cox.

## V.    CONCLUSION

We conclude that the district court misinterpreted Fla. Stat. § 607.1436 and in so doing erred in its order for the distribution of News-Journal's assets. The district court's order dated August 13, 2010 is VACATED in its entirety. Any distribution to Cox must satisfy subsection (8) of Florida's election-to-purchase statute, Fla. Stat. § 607.1436. It is unnecessary for us to resolve the other issues presented in this appeal because the district court's ruling on these questions was predicated on its erroneous decision to distribute News-Journal's assets to Cox without applying

23

§ 607.1436(8).  On remand the district court must reevaluate the claims of all of

News-Journal's creditors consistent with this opinion.

VACATED AND REMANDED.