MONACO, J.
This court has recently noted that from its inception, Florida’s PIP statute has been “a complicated piece of legislation, but the successive years of constant amendment and revision have both added to its complexity and detracted from its clarity.” See Fla. Med. & Injury Ctr., Inc. v. Progressive Express Ins. Co., 29 So.3d 329, 337 (Fla. 5th DCA), review denied, 46 So.3d 567 (Fla.2010). We are presented by the appeal before us with the opportunity to once again fish in the cloudy waters of PIP legislation. Our elusive target this time is the meaning and application of section 627.736(5)(b)l.c., Florida Statutes (2010).
Section 627.736(5)(b)l.c. reads as follows:
(b)l. An insurer or insured is not required to pay a claim or charges:
[[Image here]]
c. To any person who knowingly submits a false or misleading statement relating to the claim or charges.
The word “knowingly” is subsequently defined in section 627.732(10):
“Knowingly” means that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and proof of specific intent to defraud is not required.
The appellees, both of which are State Farm entities, take the position that if a medical provider “knowingly” submits a false claim or false charges, both the insurer and the insured are relieved of the obligation to pay both the entire claim or charges currently before the insurer, and any future claims or charges related to the same insured for the same accident. The appellant, Chiropractic One, Inc., asserts that if it knowingly submits a false charge, then the insurer is relieved of paying for that charge, but not for any other charges. The trial court ruled in favor of State Farm and held essentially that the provider forfeits its right to receive compensation on a claim by knowingly making a false or misleading charge relating to the claim. The trial court, however, did not address the issue of future charges by the provider for the same insured. Given the legislative history of this statute and the language chosen by the Legislature, we conclude that the trial court was correct and affirm.
A simplified recitation of the facts is sufficient to understand the issues presented. Chiropractic One treated nineteen State Farm insureds for injuries sustained in automobile accidents. In exchange for treatment, the insureds assigned their automobile insurance PIP benefits to Chiropractic One. Chiropractic One then submitted medical bills directly to State Farm for payment of personal injury protection benefits. After it conducted an investigation, State Farm determined that Chiropractic One was engaging in a pattern of misleading practices in its billing. It thereafter withheld benefits on the bills submitted, and filed a declaratory judgment action seeking a declaration that Chiropractic One’s misconduct relieved State Farm and the insured persons from liability for the charges.
*873 Detailing the virtually admitted improper billing practices of Chiropractic One would probably serve no useful purpose. We note that its inappropriate practices are primarily rooted in the appellant’s intentional or recklessly improper use of Current Procedural Terminology codes, including billings for services not rendered, wrongly billed, or undocumented. The manipulations were designed to misrepresent to State Farm the services supplied to the insureds and to inflate the associated billing statements. The trial court entered three summary judgments[1] in this case, the first two covering some of the nineteen insureds, and the last encompassing all of the insureds. The court concluded that the record evidence before it “established beyond any material issue of fact” that Chiropractic One knowingly and repeatedly made false and misleading claims for PIP benefits, and that the PIP claims made for every insured contained at least one false and misleading assertion, and usually contained “multiple and repeated instances of such statements.” The court then itemized the evidence that led it to conclude that Chiropractic One “knowingly” made the false and misleading claims, and finished its analysis by declaring thát neither State Farm, nor the insureds owed any PIP benefits or payments for treatment to Chiropractic One.
We, of course, review the final summary judgment de novo. See, e.g., Sandoro v. HSBC Bank, 55 So.3d 730, 731 (Fla. 2d DCA 2011); Servedio v. U.S. Bank Nat’l Ass’n, 46 So.3d 1105, 1106 (Fla. 4th DCA 2010). Likewise, statutory interpretation is generally a question of law subject to de novo review. See, e.g., Quarantello v. Leroy, 977 So.2d 648, 651 (Fla. 5th DCA), review denied, 987 So.2d 1210 (Fla.2008).
In this appeal Chiropractic One does not argue about whether it committed what amounts to fraud. It does not quibble with the conclusion that many of its billings were knowingly false, misleading, improper and unlawful. Rather its position is that the trial court erred:
[Wjhen it ruled that neither Appellees nor their insureds were responsible for any of the past or future claims submitted by Appellant thereby relieving Ap-pellees of their burden to investigate each and every “claim” for services submitted by Appellant and to provide an explanation of benefits regarding the approval or denial of each claim as mandated by Fla. Stat. § 627.736(4)(b).
Chiropractic One appears to be arguing that paragraph (4)(b) required State Farm to continue investigating the compensability of bills submitted by the appellant even after it knowingly submitted false and misleading billing statements. It apparently believes that it may continue to submit improper and misleading claims vis-a-vis each insured and that it is up to State Farm to catch them at it. Their hide-and-seek position is not well-founded.
Paragraph (4)(b) provides a thirty-day investigation period during which an insurer might either pay the claim or discover the facts that warrant a refusal to pay. See January v. State Farm Mut. Ins. Co., 838 So.2d 604, 607 (Fla. 5th DCA 2003). It is simply a safe harbor for insurers to avoid penalties on claims. Id. If the insurer pays the claim beyond the thirty-day *874 investigative period allowed by the statute, it is subject to a penalty. See United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82 (Fla.2001).
Moreover, section 627.736(4)(b) expressly states that it “does not preclude or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted under, or in violation of, subsection (5).” Any knowingly misleading or false charge, by definition, is unreasonable, not medically necessary, and in excess of permitted amounts. Thus, we see no contradiction between the two provisions.
Having now been satisfied that the misconduct was established, and we agree with the trial court that it was more than sufficiently established in the record to sustain that aspect of the final summary judgment, we must now consider the consequences of such behavior. The trial court held that neither State Farm nor its insureds owe any PIP and medical payment benefits for any of the charges encompassed within Chiropractic One’s claims with respect to the insureds. We agree that the facts here justify that outcome.
First, the plain language of section 627.736(5)(b)l.c. supports the invalidation of the claims. The statute relieves both the insurer and the insured from paying the claims of “any person who knowingly submits a false or misleading statement relating to the claim or charges.” Although “claim” and “charges” are not defined by the PIP statutes, and no cases have been suggested to us that define those terms in the context of PIP claims, it is logical to conclude that the Legislature established that dichotomy to be certain that not only the specific individual offensive “charges” were invalidated, but also that the entire “claim,” i.e., the collective of all charges, was invalidated, as well.
We come to this understanding both because of the language that the Legislature chose to employ, and because the legislative context surrounding the adoption of this particular legislation encourages this reading. The Legislature adopted section 627.736(5)(b)l.c. to address what it perceived to be significant dishonesty in connection with the claiming of PIP benefits. The 2001 legislative findings surrounding section 627.736, detailed in Section 1 of Senate Bill 1092, said, among other things:
The Legislature finds that the Florida Motor Vehicle No-Fault Law is intended to deliver medically necessary and appropriate medical care quickly and without regard to fault, and without undue litigation or other associated costs. The Legislature further finds that this intent has been frustrated at significant cost and harm to consumers by, among other things, fraud, medically inappropriate over-utilization of treatments and diagnostic services, inflated charges, and other practices on the part of a small number of health care providers and unregulated health care clinics, entrepreneurs, and attorneys.
The Legislature also made reference to, and incorporated into its findings, the Report of the Fifteenth Statewide Grand Jury. That body harshly criticized the disappointing history of PIP fraud and indicated that “a number of greedy and unscrupulous legal and medical professionals have turned that $10,000 coverage into their personal slush fund.” According to the Grand Jury, this resulted in the “loss of coverage and marginal medical treatment for those who are injured, as well as higher insurance rates for all drivers.” See also Regional MRI of Orlando, Inc. v. Nationwide Mut. Fire Ins. Co., 884 So.2d 1102, 1111 (Fla. 5th DCA 2004); cf., United Auto. Ins. Co. v. Stat Techs, Inc., 787 So.2d 920 (Fla. 3d DCA 2001), review denied, 817 So.2d 850 (Fla.2002). Similarly, *875 when the Legislature enacted the Florida Motor Vehicle Insurance Affordability Act in 2003, which again amended the PIP statute, it once again declared that the goals underpinning the no-fault laws “have been significantly compromised due to the fraud and abuse that has permeated the PIP insurance market.”
The revision of the PIP statute had as a goal, among other things, the curtailment of the perceived fraud in the PIP billing of medical services. It is perfectly consistent with that goal for the Legislature to intend to invalidate a billed claim if there is any knowing submission of false or misleading statements relating to the claim or charges submitted by a provider. We conclude, therefore, that section 627.736(5)(b)1.c. should be interpreted in that fashion.
State Farm would have us go further and hold that all billings related to a specific patient’s accident both before and after the determination of billing misconduct should be invalidated. While there might be significant logic supporting this suggestion, we decline the invitation to elongate our holding. The facts in this case do not go that far and the final summary judgment likewise does not venture into that arena. We, accordingly, leave that determination for another day, and affirm the final summary judgment rendered by the trial court.
AFFIRMED.
SAWAYA and PALMER, JJ., concur.

. The first two orders were for partial summary judgments with respect to some of the insureds. In rendering the partial summary judgments the trial court relied principally upon section 627.736(5)(d), Florida Statutes (2010), to conclude that the billings on many of the insureds were not "properly completed,” as defined in the statute, and thus were not due or compensable. The final summary judgment involving the claims of all of the insureds was based on section 627.736(5)(b)l.c.