STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Plaintiffs,

v.

A & J MEDICAL CENTER, INC., et al., Defendants.

Case No. 14–20066–CIV.

United States District Court, S.D. Florida.

Signed May 15, 2014.

Adam Kennedy Hodges, Allison Sharon Bernstein, David Ira Spector, Akerman LLP, West Palm Beach, FL, for Plaintiffs.

Julio L. Andarcio, Miami, FL, pro se.

Lewis Jay Levey, Mendy Lieberman, Levey Lieberman LLP, Miami Beach, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, Kaizen Medical Services, Inc.'s ("Kaizen['s]") Motion to Dismiss ("Motion") [ECF No. 22], filed February 18, 2014. On March 18, 2014, Plaintiffs, State Farm Mutual Automobile Company and State Farm Fire & Casualty Company (collectively, "State Farm") submitted their Corrected Response in Opposition ... ("Response") [ECF No. 45]. Kaizen filed its Reply ... ("Reply") [ECF No. 48] on March 25, 2014. The Court has carefully considered the parties' written submissions, the record, and applicable law.

## I. BACKGROUND [1]

This matter arises out of an allegedly unlawful auto insurance billing scheme perpetrated by Defendants, A & J Medical Center, Inc. ("A & J"); Julio Andarcio ("Andarcio"), owner of A & J; Carlos Gonzalez, M.D. ("Gonzalez"); and Kaizen. (*See generally* Compl.). State Farm, as an issuer of automobile insurance policies, provides its insureds with Personal Injury Protection ("PIP") benefits intended to compensate its insureds for their reasonable medical expenses incurred as a result of a covered automobile incident. (*See id.* ¶ 1). Pursuant to the Florida Motor Vehicle No–Fault Law, State Farm is obligated to provide up to $10,000.00 in PIP benefits "by paying 80% of all reasonable, medically necessary and related medical bills for services or care that was lawful at the time rendered." (*Id.* ¶ 18 (citing FLA. STAT. § 627.736(1)(a))).

In 2003, the Florida legislature enacted the Health Care Clinic Act (the "HCCA") to improve the regulation of health care clinics throughout the state. (*See id.* ¶ 26). The purpose of the HCCA "is to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by [the Agency for Health Care Administration (the "AHCA")]." (*Id.* (citing FLA. STAT. § 400.990(2))). As part of this comprehensive plan for oversight and consumer cost reduction, the HCCA requires health care clinics to appoint a medical director. (*See id.* ¶ 27). The responsibilities of the medical director include the review of patient referral contracts, supervision over and compliance with statutory recordkeeping requirements, and review of clinic billings to ensure they are not fraudulent or unlawful. (*See id.*). State Farm claims "A & J billed for services/treatments that were allegedly provided to State Farm's Insureds ... despite not having a 'Medical Director' as required by Florida law." (*Id.* ¶ 75).

According to State Farm, each Defendant played a crucial role in unlawfully obtaining payments from State Farm for medical expenses accrued by State Farm insureds who sought treatment from A & J. (*See id.* ¶¶ 10–13, 19). A & J acted as the healthcare clinic, providing rehabilitation treatments to individuals injured in automobile accidents. (*See id.* ¶ 11). "A & J misrepresented that it employed or had under contract a Medical Director who was going to provide day-to-day supervision and perform numerous statutory and administrative duties for A & J as required by Florida law." (*Id.*). Andarcio, as owner of A & J, "misrepresented ... that A & J employed or had under contract a Medical Director who was going to provide day-to-day supervision and perform numerous statutory and administrative duties for A & J as required by Florida law." (*Id.* ¶ 10).

Kaizen, a staffing firm that matches doctors with health care clinics to purportedly work as medical directors, provided inexperienced and unprepared doctors to serve as medical directors for various clinics, including A & J. (*See id.* ¶ 13). Kaizen placed Gonzalez, who "was wholly unfamiliar with the duties and obligations required of a Medical Director by Florida Statute and Administrative Code," as the ostensible medical director of A & J. (*Id.* ¶ 12). State Farm made substantial payments to, or for the benefit of, Defendants "under the [false] belief that the services provided by [A & J] were lawful and 'lawfully provided' as required by Florida law." (*Id.* ¶ 9 (alterations added)).

The Complaint contains four grounds for relief: Count I for unjust enrichment

---

1. The allegations contained in State Farm's Complaint [ ECF No. 1] are taken as true.

against Andarcio and A & J; Count II for declaratory relief pursuant to 28 U.S.C. section 2201 against Andarcio and A & J; Count III for unjust enrichment against Gonzalez; and Count IV for unjust enrichment against Kaizen. (*See generally id.*). Kaizen seeks dismissal of Count IV, arguing the Court lacks subject-matter jurisdiction over Kaizen, and, in any event, the Complaint fails to state a cause of action against it.[2] (*See* Mot. 1).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997).

### B. Federal Rule of Civil Procedure 12(b)(1)

Subject-matter jurisdiction must be established before the case can proceed on the merits. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). It is presumed that a federal court lacks jurisdiction in a particular case until the plaintiff demonstrates the court has jurisdiction over the subject matter. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citing *Turner v. Bank of N. Am.,* 4 U.S. 8, 11, 4 Dall. 8, 1 L.Ed. 718 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 182–183, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

Attacks on subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be either facial or factual. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir.1990). Like a Rule 12(b)(6) motion, "[a] 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true...." *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980) (citation omitted). In contrast, factual attacks "challenge[ ] the existence of subject matter jurisdiction in fact, ... and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citation omitted). Kaizen's Motion presents a facial attack to the Court's jurisdiction.

---

2. Clerk's Defaults have been entered against Defendants A & J, Andarcio, and Gonzalez.

(*See* [ECF Nos. 19, 30, and 31] ).

## III.  ANALYSIS

The Court addresses the issues of subject-matter jurisdiction over Kaizen and whether the Complaint properly states a claim for unjust enrichment, in turn.

### A.  Subject–Matter Jurisdiction

Diversity jurisdiction—the basis for the Court's exercise of subject matter jurisdiction here (*see* Compl. ¶ 15)—exists when the parties are citizens of different states, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Kaizen argues the Court lacks subject-matter jurisdiction because the facts pleaded in the Complaint demonstrate the amount-in-controversy requirement is not satisfied. (*See* Mot. 2–3). State Farm relies on Defendants' joint and several liability for the aggregation of State Farm's total claim of damages amongst all Defendants, thus satisfying the amount-in-controversy requirement as to Kaizen. (*See* Resp. 6–9).

"A reviewing court should not dismiss an action for failure to satisfy the amount-in-controversy requirement unless it appears to a 'legal certainty' that plaintiff's claim is actually for less than the jurisdictional amount." *Wonders Trust v. Deaton, Inc.,* 200 F.R.D. 473, 478 (M.D.Fla.2000) (citation omitted). The general rule for aggregating claims against multiple defendants to satisfy the amount-in-controversy requirement is that "where a suit is brought against several defendants asserting claims against each of them which are separate and distinct, the test of jurisdiction is the amount of each claim, and not their aggregate." *Jewell v. Grain Dealers Mut. Ins. Co.,* 290 F.2d 11, 13 (5th Cir.1961) (citations and internal quotation marks omitted). "Claims against multiple defendants can only be aggregated when the defendants are jointly liable to the plaintiff." *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1263 n.

7 (11th Cir.2000) (citing *Jewell,* 290 F.2d at 13). Further,

State Farm relies on aggregating claims among the Defendants to satisfy the amount-in-controversy requirement, alleging "a scheme jointly perpetrated by all of the Defendants." (Resp. 7 (citing Compl. ¶¶ 5, 13, 38–42)). Pursuant to Florida's Motor Vehicle No–Fault Law, Fla. Stat. § 627.736, automobile insurers are legally obligated to provide PIP benefits up to $10,000.00 for injuries resulting from motor vehicle accidents. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.,* 427 Fed.Appx. 714, 717 (11th Cir.2011), *rev'd in part on other grounds, State Farm Mut. Auto. Ins. Co. v. Williams,* Nos. 12–11840, 12–15331, 563 Fed.Appx. 665, 671, 2014 WL 1465726, at *5 (11th Cir. Apr. 15, 2014). Under the statute, reimbursement for PIP benefits shall be provided only for "[i]nitial services and care that are lawfully provided, supervised, ordered, or prescribed by a [licensed] physician...." Fla. Stat. § 627.736(1)(a)(1) (alterations added). "An insurer is not required to pay a claim or charges ... [f]or any service or treatment that was not lawful at the time rendered...." *Id.* § 627.736(5)(b)(1)(b) (alterations added).

State Farm has alleged "Kaizen and Dr. Gonzalez enabled A & J to operate unlawfully, without the oversight of a Medical Director [as] intended by the [Florida] legislature." (Compl. ¶ 42 (alterations added)). The Complaint claims "Kaizen served an essential role in the unlawful Medical Director arrangement by exploiting the clinic's need for a Medical Director by placing unprepared physicians, like Defendant Gonzalez, who lacked functional knowledge of a Medical Director's statutory obligations and duties." (*Id.* ¶ 13). Taking the allegations regarding Defendants' participation in a scheme to unlaw-

fully retain PIP benefits as true, State Farm has properly pleaded Kaizen and the other Defendants are jointly liable. *See U.S. Commodity Futures Trading Comm'n v. Capital Blu Mgmt., LLC,* No. 6:09–cv–508–Orl–28DAB, 2011 WL 2357629, at *6 (M.D.Fla. June 9, 2011) ("The Defendants should be held jointly and severally liable for restitution. Acting in concert with one another, they caused harm to FX Fund Participants and unjustly enriched themselves.").

Nevertheless Kaizen insists there is a reasonable basis for a lesser apportionment of liability. (*See* Reply 4). Because the Complaint alleges Kaizen was paid $2,000.00 per month to provide A & J with a medical director over a period of nearly eighteen months, Kaizen suggests its maximum apportionment of liability is $35,000.00 ($2,000.00 per month, multiplied by 17.5 months). (*See id.*). According to State Farm, Kaizen's participation was a crucial component in the scheme to unlawfully procure PIP benefits from State Farm by knowingly providing A & J (and others) with unqualified medical directors (like Gonzalez) who would not scrutinize A & J's billing. In total, the scheme cost State Farm approximately $1,140,239.00 in unlawful PIP payments. (*See* Resp. 9).

As it does not appear beyond a legal certainty that Kaizen can avoid joint and several liability for its participation in the scheme as alleged, the Court is not persuaded to apportion liability in the manner suggested by Kaizen. State Farm's Complaint satisfies the jurisdictional amount.

### B. Unjust Enrichment

Kaizen also asserts the unjust enrichment claim must be dismissed because State Farm has only alleged Kaizen received indirect and not direct benefits. (*See* Mot. 6). Additionally, Kaizen argues it could not have had any knowledge of the benefits, and State Farm has failed to plead circumstances indicating it would be inequitable for Kaizen to retain any purported benefits. (*See id.* 7–12). State Farm insists Kaizen benefitted from its role in the joint scheme to unlawfully acquire PIP benefits from State Farm. (*See* Resp. 17–19). State Farm further contends it has properly pleaded sufficient facts to state a claim for unjust enrichment against Kaizen. (*See id.* 16).

To state an actionable claim for unjust enrichment, a plaintiff must allege: (1) a benefit bestowed upon a defendant by the plaintiff; (2) the defendant's appreciation of the benefit; (3) the defendant's acceptance and retention of the benefit; and (4) circumstances that make it inequitable for the defendant to retain the benefit without compensating the plaintiff for its value. *See Alvarez v. Royal Caribbean Cruises, Ltd.,* 905 F.Supp.2d 1334, 1341 (S.D.Fla.2012) (citation omitted). In Florida, the law of unjust enrichment requires the benefit allegedly conferred by the plaintiff to pass directly to the defendant. *See Kopel v. Kopel,* 117 So.3d 1147, 1153 (Fla. 3d DCA 2013). Yet, unjust enrichment claims are not precluded "merely because the 'benefit' passed through an intermediary before being conferred on a defendant." *Williams v. Wells Fargo Bank N.A.,* No. 11–21233–CIV, 2011 WL 4901346, at *5 (S.D.Fla. Oct. 14, 2011) (footnote call number and citation omitted) (denying motion to dismiss); *see also Aceto Corp. v. TherapeuticsMD, Inc.,* 953 F.Supp.2d 1269, 1288 (S.D.Fla.2013) ("There are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct *contact,* or privity, is not the equivalent of conferring a direct *benefit.*" (emphases in original; citations omitted)).

■ Here, the Complaint properly pleads Kaizen received a benefit from State Farm through Kaizen's knowing participation in the unlawful scheme to recover PIP benefits. The Complaint explains "Kaizen served an essential role in the unlawful Medical Director arrangement by exploiting the clinic's need for a Medical Director by placing unprepared physicians, like Defendant Gonzalez, who lacked functional knowledge of a Medical Director's statutory obligations and duties." (Compl.¶ 13). According to State Farm, "Kaizen and Dr. Gonzalez enabled A & J to operate unlawfully, without the oversight of a Medical Director [as] intended by the [Florida] legislature." (*Id.* ¶ 42 (alterations added)). State Farm further alleges "A & J passed on to Kaizen a portion of the proceeds paid to [A & J] by State Farm in connection with th[e] improper claims for PIP benefits." (*Id.* ¶ 104 (alterations added)). Kaizen accepted these benefits, "despite its knowledge that the services purportedly rendered by A & J were not 'lawfully provided' as required by Florida law." (*Id.* ¶ 105).

State Farm has sufficiently alleged Kaizen unlawfully received benefits from State Farm, through A & J as an intermediary, for Kaizen's participation in the PIP scheme. *See State Farm Fire & Cas. Co. v. Silver Star Health and Rehab Inc.*, No. 6:10–cv–1103–Orl–31GJK, 2011 WL 6338496, at *5 (M.D.Fla. Dec. 19, 2011) ("Florida law is clear that State Farm can refuse payment under Fla. Stat. § 627.736(5)(b)(1)(b) for services unlawfully rendered. As a result of Defendants' alleged conduct, State Farm mistakenly paid claims which it was statutorily entitled to deny. Thus, it would be inequitable to allow Defendants to retain those benefits." (internal citation omitted)).

Further, Kaizen's contention it could not have known of the benefits it was receiving from its involvement in the PIP scheme is insufficient to compel dismissal of Count IV. Kaizen argues the Complaint fails for it does not allege Kaizen had "knowledge of any of the patients' information, including their insurance information (which would violate [the Health Insurance Portability and Accountability Act, 42 U.S.C. section 1320(d) ])." (Mot. 7). This is a myopic view of the scheme alleged by State Farm. According to the Complaint's allegations, Defendants (including Kaizen) were involved in a broad scheme to unlawfully obtain PIP benefits from insurance companies (including State Farm) that were obligated to provide those benefits for the reasonable medical expenses incurred by their insureds. The fact Kaizen and the other Defendants reaped the benefits indiscriminately from insurance companies in general does not make their awareness of the benefits conferred any less meaningful, or an action for equitable relief any less appropriate. *Cf. Golden v. Woodward*, 15 So.3d 664, 670 (Fla. 1st DCA 2009) ("An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." (internal quotation marks and citation omitted)).

Neither is the Court persuaded by Kaizen's argument State Farm has failed to plead circumstances showing it would be inequitable to allow Kaizen to retain any benefits conferred upon Kaizen. As previously expressed, Kaizen allegedly played an essential role in staffing A & J by placing Gonzalez at A & J from September 14, 2009 through February 28, 2011. (*See* Compl. ¶ 39). Kaizen "provided Gonzalez with virtually no training [or] information regarding a Medical Director's duties and obligations under Florida law." (*Id.* ¶ 40 (alteration added)). The Complaint makes clear Kaizen knowingly participated in a

scheme to provide A & J with the means of avoiding the statutory requirement of a proper medical director, thereby depriving State Farm of the assurances intended by the Florida legislature when it enacted the HCCA and established the medical director requirement. Under such circumstances, "it would be inequitable to allow Defendants to retain [the PIP] benefits." *Silver Star Health and Rehab,* 2011 WL 6338496, at *5 (alteration added). Consequently, State Farm has adequately pleaded a claim for unjust enrichment against Kaizen.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Kaizen's Motion **[ECF No. 22]** is **DENIED.**